IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Richard Bird, et al,,                    :

      Plaintiffs,                    :

  v.                                       :    Case No. 2:06-cv-0588

Carteret Mortgage Corp., et al.,:    JUDGE FROST

      Defendants.                    :


REPORT AND RECOMMENDATION

    This case was filed in the Franklin County Court of Common
Pleas by Richard and Valerie Bird, both Ohio residents, against
two named defendants.  One, Carteret Mortgage Corporation, is an
out-of-state corporation.  The other, Flagship Mortgage
Corporation, is a citizen of Ohio for diversity purposes.  All of
the claims asserted in the complaint arise under state law; more
specifically, they arise under provisions of the Ohio Mortgage
Broker Registration Act (OMBRA)found at O.R.C. §1322.07.

    Carteret removed the case to this Court under 28 U.S.C.
§1441(a).  In its notice of removal, it acknowledged that
complete diversity of citizenship was lacking, but asserted,
alternatively, that the claim against Flagship should be ignored
for diversity purposes because it is barred by the applicable
statute of limitations and the claim was therefore fraudulently
joined to plaintiffs' claims against Carteret for the purpose of
defeating removal jurisdiction; or that Flagship itself was
fraudulently joined as a defendant because the claims asserted
against it are so unrelated to the claims against Carteret that
the joinder of defendants was not proper under Ohio procedure and
falls within the "fraudulent misjoinder" doctrine, allowing this
Court to disregard Flagship's citizenship for jurisdictional

purposes.

The Birds have moved to remand this case to state court. Carteret has opposed the motion.  Flagship appears to take no position on the motion to remand, but argues that the claims against it must be dismissed for want of subject matter jurisdiction because both the Birds and Flagship are Ohio residents.  For the following reasons, it will be recommended that the motion to remand be granted.

I.

The facts pertinent to the motion to remand can be easily summarized.  The Birds allege that, through the unscrupulous actions of a Mr. Delacruz, who is not a party to this case, they were induced to purchase a number of properties in Franklin County at an inflated value.  Carteret provided financing for some of the properties, and Flagship provided financing for others.  The parties appear to agree that the two lenders did not work in concert and did not share in the financing of any particular piece of real estate.  However, the Birds contend that both lenders violated O.R.C. §1322.07 by making false or misleading statements in the course of financing these transactions or by otherwise engaging in misdealing.  The original complaint asserted a single cause of action against both defendants.  The amended complaint, filed after removal, asserts two causes of action, one against each defendant, and contains slightly more detail concerning each defendant's allegedly wrongful conduct.  However, the Birds continue to assert only state law claims, and only violations of the OMBRA.  It is with this factual background in mind that the Court will analyze the question of whether the case was properly removed.

II.

The Court turns first to the argument that the doctrine of "fraudulent joinder" allows Flagship's Ohio citizenship to be

2

disregarded for jurisdictional purposes.  That doctrine, which is well-established in the law, permits the Court to exercise removal jurisdiction over a case if any claim in the case which would otherwise defeat such jurisdiction is so lacking in arguable merit that the only apparent purpose for pleading such a claim is to defeat federal jurisdiction.

A claim of "fraudulent joinder," while not necessarily implying actual fraudulent conduct on the plaintiff's part, does involve an assertion that the resident defendant was joined solely, and without any legal basis, for the purpose of defeating the other defendants' right to remove the case on diversity grounds.  As one might suspect, the law relating to this aspect of removal jurisdiction is stringent and requires removing defendants to do more than simply articulate a basis for dismissal of the plaintiff's claims against the non-diverse defendant who has allegedly been fraudulently joined.  As the Fifth Circuit has acknowledged, in cases which are uniformly followed by cases from this and other circuits, see, e.g., Alexander v. Electronic Data Systems Corp., 13 F.3d 940 (6th Cir. 1994), when a removing party alleges that a defendant has been fraudulently joined as a party to a case in order to defeat removal jurisdiction, that party faces an uphill struggle in persuading the Court that not only does the complaint fail to state a claim against the non-diverse defendant, but that there is not even a colorable argument that it does.  See B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981).  When a colorable argument in support of the claim against the non-diverse defendant exists, although the defendant may ultimately succeed in having the claim dismissed by the state court, removal of the case is improper.  In Miller Brewing, the court held as follows:

> The burden of persuasion placed on those who

3

> cry 'fraudulent joinder' is indeed a heavy
> one.  In order to establish that an in-state
> defendant has been fraudulently joined, the
> removing party must show either that there is
> no possibility that the plaintiff would be
> able to establish a cause of action against
> the in-state defendant in state court, or
> that there has been outright fraud in the
> plaintiff's pleading of jurisdictional facts.

Id. at 549.  Under the Miller Brewing standard, the Court's
inquiry is not whether the complaint states a claim, but whether
"there remained a possibility of a valid claim being stated
against the in-state defendants . . . ."  If there is, "the case
would be properly cognizable only in the state courts."  Id. at
550.

     In reaching that conclusion, the Miller Brewing court relied
on two prior Fifth Circuit decisions, Bobby Jones Garden
Apartments v. Suleski, 391 F.2d 172 (5th Cir. 1968) and Tedder v.
F.M.C. Corp., 590 F.2d 115 (5th Cir. 1979).  The Sixth Circuit
Court of Appeals has cited both of these cases with approval as
articulating the appropriate standard for evaluating a removing
defendant's assertion that in-state defendants have been joined
without a reasonable basis for asserting liability and that the
joinder should be disregarded for purposes of determining
diversity jurisdiction.  See Alexander, 13 F.3d 940 (6th Cir.
1994).

     District court cases within this circuit have also followed
the Miller Brewing rule, either exactly as stated or in a
modified form which focuses not on the existence or non-existence
of a claim against the non-diverse defendants, but on whether
there is an articulable or reasonable basis for that claim.  See
Brusseau v. Electronic Data Systems Corp., 694 F.Supp. 331, 333-
334 (E.D. Mich. 1988); Bucksnort Oil Co. v. Nat'l Convenience
Stores, Inc., 585 F.Supp. 883, 886 (M.D. Tenn. 1984).  Thus, in

4

deciding whether diversity jurisdiction exists here, the Court's task is limited to determining whether the complaint states any claim against the resident defendant that is even arguably permitted under state law.

Here, Carteret does not argue that the facts as pleaded fail to state a cognizable claim against Flagship under the OMBRA. Rather, it argues that the claim is really a fraud claim and is therefore barred by the four-year statute of limitations found in O.R.C. §2305.09.

It is unclear whether a claim that might be subject to dismissal on limitations grounds can ever qualify as a claim lacking even an arguable basis under state law.  That is especially true where state law allows the tolling of a statute of limitations under some circumstances, or where the date on which the claim accrued is subject to debate either because the state has adopted a "discovery rule" which provides that a claim does not accrue until the injured party either learns of, or should, through the exercise of reasonable diligence, have learned of the existence of the claim, or state law permits the limitations bar to be avoided if the defendant is guilty of fraudulent concealment.  Such matters are usually fact-intensive and cannot be definitively resolved on the pleadings.  See, e.g., Jeter v. Orkin Exterminating Co., 84 F.Supp. 2d 1334 (M.D. Ala. 2000).

Even if the statute of limitations can form the basis for a finding of fraudulent joinder in some cases, however, this is clearly not such a case.  Carteret cites no authority for the proposition that claims under the OMBRA are governed by a four-year statute of limitations.  The Birds contend that the relevant limitations period is found in O.R.C. §2305.07, which provides for a six-year limitations period for statutorily-created causes of action.  The Court has located only one Ohio decision that

5

addresses this issue, and it supports the Birds' view of the law. See Carver v. Discount Funding Associates, 2004 WL 2827229 (Huron Co. Comm. Pleas, June 10, 2004). Under these circumstances, there is at least an argument to be made that the Birds will be able to recover on their OMBRA claim against Flagship. Nothing more is needed to support the Court's rejection of Carteret's claim of fraudulent joinder.

                                III.

Carteret's alternative basis for removal is that the claim against Flagship, even if viable, was improperly joined with the Birds' claim against Carteret. Other than arising under the same statute, the claims have nothing in common, and the two defendants are not alleged to have engaged in any concerted or joint action. Carteret asserts that the joinder of the Birds' claims against these two defendants is not proper under the Ohio Rules of Civil Procedure, and that under the doctrine of "fraudulent mis-joinder" the Court should again disregard Flagship's presence in the case and exercise diversity jurisdiction over the claim against Cateret.

If this case had been removed prior to the 1990 amendments to 28 U.S.C. §1441(c), that statutory section would have provided the controlling rule of law applicable to this situation. As the statute then provided, a case in which both a removable and a non-removable claim were joined together could be removed in its entirety if the two claims were "separate and independent." Essentially, claims were separate and independent within the meaning of §1441(c) if they did not arise out of the same common nucleus of facts and if they sought completely separate redress for unrelated legal injuries. Stating the same proposition in the negative, the Supreme Court held, in American Fire & Cas. Ins. Co. v. Finn, 341 U.S. 6, 13 (1951), that "where there is a single wrong to plaintiff, for which relief is sought, arising

                                 6

from an interlocked series of transactions, there is no separate
and independent claim or cause of action under §1441(c)." See
also Samczyk v. Chesapeake & Ohio R. Co., 643 F.Supp. 79, 80
(E.D. Mich. 1990)(claims arising out of different sets of facts
and seeking redress for different legal wrongs are "separate and
independent" under §1441(c)).  There would appear to be little
dispute that the Birds' claims against Carteret and Flagship meet
this definition.  Each defendant provided financing for separate
pieces of real estate, did not act jointly or in concert, and
allegedly inflicted a separate amount of financial injury on the
Birds.  Consequently, under the pre-1990 version of §1441(c),
Carteret could properly have removed the entire case, and the
Court would then have been authorized to remand the non-removable
claims to state court while accepting jurisdiction over the
removable claims.

       In 1990, however, Congress amended §1441(c) to limit its
application to cases involving claims arising under federal law.
As the statute now reads, the removal of a case in which a claim
over which the federal court has jurisdiction is joined with a
claim over which such jurisdiction is lacking is authorized only
if the former claim is "within the jurisdiction conferred by
section 1331 of this title ...."  Section 1331, of course,
provides for District Court jurisdiction over claims which arise
"under the Constitution, laws, or treaties of the United States."
Thus, in a case like this one, where both the removable and non-
removable claims arise under state law, §1441(c) no longer
authorizes the removal of the case even if the claims are
separate and independent.  Consequently, one of the situations
that §1441(c) was originally designed to prevent - allowing a
plaintiff to defeat federal court diversity jurisdiction simply
by joining removable and non-removable claims in a single state
court action - no longer falls within the ambit of the statute.

<u>Cf. Thomas v. Shelton</u>, 740 F.2d 478, 483 (7th Cir. 1984)("If it were not for section 1441(c), the diversity plaintiff who wanted to litigate his case in state court could, simply by joining a claim against a resident of his state, destroy the complete diversity required for federal diversity jurisdiction and thus prevent the nonresident defendant from removing").

Perhaps in response to this narrowing of the removal statute, some courts have used the doctrine of "fraudulent mis-joinder" as a basis for allowing the removal of a case where a claim that falls within the federal courts' diversity jurisdiction is joined with one which does not. Those courts have purported to replace the "separate and independent claim" analysis with a test that evaluates the propriety of the joinder of claims under state law. Thus, in <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353 (11th Cir. 1996), the court held that the joinder of claims against an in-state defendant which was inconsistent with the joinder rules of the state court could be disregarded for diversity purposes, but only if the federal court concluded that the claims were not only mis-joined, but egregiously mis-joined. The latter circumstance, according to <u>Tapscott</u>, could not be distinguished from the situation where a frivolous claim was pleaded in order to defeat removal, and just as the fraudulent joinder doctrine justifies disregarding the frivolous claim for removal purposes, the fraudulent mis-joinder doctrine justifies a similar result.

It is valid to observe that the fraudulent mis-joinder doctrine, which does not appear in case law prior to 1996, may well be inconsistent with the intent of Congress to narrow the scope of removal jurisdiction by amending §1441(c) to restrict its application to cases involving questions of federal law. Former §1441(c) was, after the <u>Finn</u> decision, most applicable to cases precisely like this one. As one court observed,

> After _Finn_, few, if any, cases will be removed
> on findings that they present diversity claims
> that are separate and independent from non-
> removable claims.  If the diversity claim is so
> separate and independent that it does not involve
> the same facts and transactions as the non-
> removable claims, it cannot usually be joined
> in the same action with the nonremovable claims.

Contemporary Services Corp. v. Universal City Studios, 655 F.
Supp. 885, 891 n. 8 (C.D. Cal. 1983).  However, should the
plaintiff disregard state joinder rules and cobble together an
action out of such separate claims, former §1441(c), as
interpreted by _Finn_, would have allowed for removal.  By changing
the statute, and doing so in a plain effort to reduce the number
of diversity cases removed to federal court, Congress may well
have intended to make cases such as the present one non-
removable. Thus, it can reasonably be questioned whether the
federal courts should create a new doctrine that circumvents that
intention.

Perhaps for that reason (and, in addition, because the line
between a joinder of parties or claims that is improper, and one
that is _egregiously_ so, is hard to draw), a number of courts have
refused to adopt the fraudulent mis-joinder doctrine.  For
example, in Rutherford v. Merck & Co., 428 F.Supp. 842, 851 (S.D.
Ill. 2006), the court declined to follow _Tapscott_ and held that
"whether viable state-law claims have been misjoined - even
egregiously - is a matter to be resolved by a state court."  The
court noted that "the federal courts traditionally have held that
matters of state civil procedure, including, presumably, joinder
of parties and claims, have no bearing on the existence or
nonexistence of federal subject matter jurisdiction in a given
case."  _Id_.  The court cited to a number of decisions that so
hold, and concluded that "the _Tapscott_ doctrine is an improper
expansion of the scope of federal diversity jurisdiction by the

9

federal courts." Id. at 852.  The court also cited policy
reasons in support of its decision, noting that jurisdictional
rules should be clear and easy to apply, and observing that
several variations of the Tapscott rule had emerged through the
case law, none of which were either clear or easy to apply, and
that it was unlikely that the difficulty in applying the rule
would be resolved by future decisions.

Other courts have also declined to follow Tapscott.  See,
e.g., Osborn v. Metropolitan Life Ins. Co., 341 F.Supp. 2d 1123
(C.D. Cal. 2004); but see, e.g., Asher v. Minn. Mining and Manuf.
Co., 2005 WL 1593941 (E.D. Ky June 30, 2005), and cases cited
therein.  In this Court's view, the cases declining to adopt the
fraudulent mis-joinder rule are the better reasoned and are more
consistent with the oft-repeated maxim that removal jurisdiction
is to be strictly construed, and all doubts about the propriety
of removal are to be resolved in favor of remand.  See, e.g.,
Coyne v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999).
The Court does not believe that when Congress opted to take cases
such as this one out of the purview of §1441(c), it contemplated
that a newly-created judicial doctrine would essentially restore
such cases to the federal docket.

The diverse defendant is not, of course, left without a
remedy in this situation.  As the Osborn court noted, "the better
rule would require [the removing defendant] to resolve the
claimed misjoinder in state court, and then, if that court
severed the case and diversity then existed, it could seek
removal of the cause to federal court."  Osborn, 341 F.Supp. 2d
at 1127.  Of course, any applicable time limits for removal would
have to be observed.  However, this rule permits the state courts
to resolve the joinder issues without reference to a standard
such as "egregious misjoinder" and preserves the integrity of the
concept that state procedural irregularities cannot have an

effect of the existence or nonexistence of federal court jurisdiction.

IV.

Based on the foregoing, the Court recommends that the plaintiffs' motion to remand (#8) be granted and that this case be remanded to the Franklin County, Ohio Court of Common Pleas for want of subject-matter jurisdiction.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

11