IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD BIRD, ET AL.,

      Plaintiffs,                               Case No. 2:06-CV-588
                                                       JUDGE GREGORY L. FROST
    v                                                  Magistrate Judge Kemp

CARTERET MORTGAGE CORP.,

    ET AL.,

      Defendants.

**OPINION AND ORDER**

      This case is before the Court to consider objections filed by defendant Carteret Mortgage Corporation to a Report and Recommendation issued by the Magistrate Judge on January 5, 2007. The recommendation to which Carteret objects is the remand of this case to the Court of Common Pleas of Franklin County, Ohio, from which court the case was removed.  For the following reasons, and after a *de novo* review of the record, see Vogel v. U.S. Office Products, 258 F.3d 509 (6th Cir. 2001), the objections will be overruled and an order of remand will issue.

**I.  Background**

      Plaintiffs, both of whom are citizens of Ohio for purposes of the diversity statute, 28 U.S.C. §1332(a), filed this action in the Franklin County, Ohio, Court of Common Pleas.  They asserted claims only under the Ohio Mortgage Broker Registration Act (OMBRA), O.R.C. §1322.07.  One of the two defendants, Flagship Mortgage Corporation, is also an Ohio resident, so that on the face of the complaint, complete diversity (which is required for removal based on diversity jurisdiction, see Strawbridge v. Curtiss, 3. Cranch (7 U.S.) 267 (1806)) is lacking and

the case is not one over which the Court can exercise jurisdiction.  See 28 U.S.C. §1441(a)(only a "civil action ... of which the district courts of the United States have original jurisdiction" can be removed to the district court).

Despite this apparent lack of diversity jurisdiction, Carteret, which is not an Ohio resident, removed the case, relying on 28 U.S.C. §§1441(a) and 1441(b) and two judicially-crafted doctrines, which, if they apply, allow the Court to disregard either the claims asserted against the resident defendant or that defendant's presence in the action altogether.  The two doctrines, which are intended to prevent a plaintiff from defeating an out-of-state defendant's ability to remove a case simply by joining completely frivolous claims against an in-state party, are referred to as the "fraudulent joinder" and the "fraudulent misjoinder" doctrines.  The Magistrate Judge concluded that neither doctrine applies here, and he recommended that the case be remanded to state court.  It is that recommendation to which Carteret objects.

## II.  Fraudulent Joinder

The case law relating to the fraudulent joinder doctrine is correctly set forth at pages 3-5 of the Report and Recommendation.  Carteret does not argue that the legal standard used by the Magistrate Judge is incorrect.  Rather, it contends that the Magistrate Judge erred in finding that the fraudulent joinder doctrine (which permits the Court to disregard only those state law claims which have no colorable chance of surviving a motion to dismiss were such a motion to be filed in the state court) is inapplicable to the plaintiffs' OMBRA claim against Flagship.

In characterizing the plaintiffs' claim against Flagship as completely frivolous, Carteret argues that the claim is barred by the applicable state statute of limitations.  Carteret asserts that

2

the claim, although pleaded under a statute (i.e. OMBRA), is really a fraud claim or some other type of tort claim. In Ohio, fraud claims and other tort claims must be filed within four years of the date that the cause of action accrued. O.R.C. §2305.09. Thus, Carteret contends that it is a virtual certainty that the OMBRA claim would be dismissed by the state court.

In reaching the opposite conclusion, the Magistrate Judge noted that the general statute of limitations in Ohio for liability created by statute is found in O.R.C. §2305.07 and is six years. Plaintiffs rely on that statute of limitations in seeking to preserve their claim. The Magistrate Judge did not decide which statute of limitations actually applies, since that determination should be made only by a court having jurisdiction to decide the merits of the case, but only that the plaintiffs could make a colorable argument that the six-year limitations period applies. The question raised by the objections is whether that determination is incorrect.

The Report and Recommendation notes that there is only one Ohio court decision on the question of whether liability under the OMBRA is governed by a four-year or a six-year statute of limitations. That decision, <u>Carver v. Discount Funding Associates</u>, 2004 WL 2827229 (Huron Co. Comm. Pleas, June 10, 2004), held that the longer six-year statute of limitations applies. Given that the issue is an unsettled one under Ohio law, and given that plaintiffs could argue that the <u>Carver</u> decision was correctly decided, the Magistrate Judge held that there is at least a colorable argument to be made that the claim against Flagship would survive a motion to dismiss.

Carteret devotes several pages of its memorandum to an argument that, under the legal principles laid out by the Ohio Supreme Court in <u>McAuliffe v. Western States Import Co.</u>, 72 Ohio St. 3d 564 (1995), <u>Carver</u> was wrongly decided. According to Carteret, the correct

3

approach to determining if a cause of action arising under a statute is governed by the four-year statutes of limitations applicable either to fraud or to tort actions is to determine if the liability is one which would exist independently of the statute in question. If so, the shorter limitations period applies even if the claim is expressly made pursuant to the statute. In other words, only statutory causes of action which did not exist at common law are governed by the longer limitations period set forth in O.R.C. §2305.07.

However meritorious this argument may be, the question the Court must answer under the fraudulent joinder doctrine is whether there is a plausible counter-argument available to the plaintiffs. As Judge Sargus of this Court observed in Shephard v. Allstate Ins. Co., 2006 WL 745588, *2 (S.D. Ohio March 17, 2006), when "Ohio law on the sufficiency of Plaintiffs' claims ... is not entirely clear," the better practice is to remand the case to state court so that the Ohio courts can decide the issue. See also Wiseman v. Universal Underwriters Ins. Co., 412 F.Supp. 2d 801 (S.D. Ohio 2005). An argument that the only decided case in Ohio favors the plaintiffs' position is not a wholly frivolous one, even if it turns out to be incorrect. Because such an argument can be made here, the Court finds the fraudulent joinder doctrine inapplicable.

### III.  Fraudulent Misjoinder

The fraudulent misjoinder doctrine, which Carteret also invoked in its notice of removal, is of more recent origin and less well-developed than the fraudulent joinder doctrine. It addresses the relationship of the defendants who have been joined in the state court action, and applies (if at all) to situations where the complaint may state arguably viable claims against both the in-state and out-of-state defendants, but there is no arguable basis for joining those claims and defendants together. Again, there is an underlying premise that it is unfair to allow a

4

plaintiff to prevent removal of an action to federal court simply by coupling unrelated parties and claims in a single lawsuit that involves non-diverse parties, and that the federal court can properly disregard the mis-joined party when determining whether diversity jurisdiction exists.

     The Sixth Circuit Court of Appeals has not adopted this doctrine, at least in its present form.  The "modern" version of the fraudulent misjoinder doctrine appears to have been first articulated in a decision from the Eleventh Circuit Court of Appeals, <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353 (11th Cir. 1996).  Since then, as Carteret points out in its objections at pages 13-14, one other Court of Appeals (the Fifth Circuit, in <u>In re Benjamin Moore & Co.</u>, 309 F.3d 296 (5th Cir. 2002)) and at least seven different district courts have noted the doctrine with some level of approval, although the endorsement given to the doctrine by the Fifth Circuit is somewhat open to question, <u>see Alegre v. Aguoyo</u>, 2007 WL 141891, *5 n.1  (N.D. Ill. January 17, 2007) ("It is not entirely clear that the Fifth Circuit has 'adopted' the <u>Tapscott</u> test"). Other district courts, such as the ones referred to at pages nine and ten of the Report & Recommendation, have declined to do so, viewing it as an unwarranted expansion of removal jurisdiction without a clear statutory basis.  <u>See also Vogel v. Merck & Co., Inc.</u>, ___ F.Supp. 2d ___, 2007 WL 709002, *6 (S.D. Ill. March 6, 2007) (citing to decisions from five different districts, including this one, which have refused to recognize the doctrine).  The Magistrate Judge resolved this conflict in favor of an approach which makes the joinder issue one for the state court in the first instance, allowing removal if the state court severs the parties and thereby creates a case in which complete diversity exists.

     In reaching that decision, the Magistrate Judge relied primarily on the unstated implications of the 1990 amendments to the removal statute, which, among other things, altered

5

the language in 28 U.S.C. §1441(c) to preclude removal of a diversity case in which the plaintiff joined "separate and independent claims," at least one of which was otherwise removable, in the same complaint. Under the prior version of the statute, when such joinder of claims occurred, the defendant was entitled to remove the case, and the district court then had the discretion to exercise jurisdiction over the entire case, or to remand the non-removable claims. Cf. American Fire & Cas. Ins. Co. v. Finn, 341 U.S. 6, 13 (1951). Under the 1990 amendments, however, the reach of the "separate and independent claim" doctrine was limited to cases where the separate and independent claim arises under federal law. The Magistrate Judge viewed this change, which was designed to reduce the number of diversity cases being removed to federal courts, to be inconsistent with the fraudulent misjoinder doctrine.

In its objections, Carteret contends that §1441(c) was primarily designed to address the situation where unrelated claims, and not unrelated parties, were joined in the state court complaint, and that the federal courts have the power under §1441(b) to examine the propriety of state court joinders. That subsection provides, in pertinent part, that a diversity action is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

First, the Court rejects the argument that §1441(b) is an open invitation to the federal courts to examine the propriety of joinder of in-state defendants under the state court's joinder rules. That subsection is designed to prevent the removal of a diversity case brought in a state court by an out-of-state plaintiff against an in-state defendant. If the non-resident plaintiff has elected not to take advantage of the federal courts' diversity jurisdiction in the first instance, which jurisdiction is available primarily as a means for an out-of-state plaintiff to avoid any

6

potential for local bias that might exist in the state courts, it would be anomalous to permit the in-state defendant to remove the case. Further, the Tapscott decision did not rely on this subsection to support the doctrine, and this Court declines to read this language in §1441(b), which has contained such language for many years, as Congressional support for a doctrine first enunciated only within the last decade.

More importantly, apart from whether the 1990 amendment to §1441(c) can be viewed as evincing a Congressional intent to preclude the removal of cases where defendants are allegedly improperly joined, this Court shares the concern of other courts and commentators that any expansion of the express removal provisions of §1441 should be viewed with caution, given the venerable rule of construction that removal statutes should be strictly construed against a finding of jurisdiction and in favor of remand. See Alexander v. Electronic Data Systems, 13 F.3d 940, 949 (6th Cir. 1994). The rule created in Tapscott does not contemplate that the federal court will decide issues of state joinder law in the first instance and permit removal whenever such joinder is improper. Rather, it creates a standard of "egregious" misjoinder, noting that "[w]e do not hold that mere misjoinder is fraudulent joinder...." Id. at 1360. Predictably, courts which have chosen to follow Tapscott have not been able to craft a bright-line rule which distinguishes "egregious" misjoinders from "mere" misjoinders. Allowing removal under such circumstances simply creates one more occasion for federal courts to engage in a review of state law, and unlike the fraudulent joinder doctrine, the review is not of state substantive law, which federal courts undertake routinely in those diversity cases which are properly brought before the court, but of state procedural law, which is almost never the subject of federal court determination.

This Court agrees that issues of state procedural law should not be determinative of, or

7

even relevant to, issues of federal court jurisdiction in most instances, and that creating a new doctrine having the effect of expanding the removability of state court cases that, on their face, do not fall within the limited jurisdiction of the federal courts is neither wise nor warranted.  As the Magistrate Judge noted, the problem that the fraudulent misjoinder doctrine is designed to address can ordinarily be resolved by having the state court rule on the propriety of the joinder in the first instance, and permitting removal if the parties and claims are severed into two or more cases, at least one of which is clearly removable.  Although Carteret argues that in some cases, the determination of improper joinder may take more than a year, thus potentially defeating the defendant's right to remove, if the joinder is "egregiously" improper (which is required by the Tapscott test), the state court should not require a year to resolve the issue.  In any event, because the type of removal advocated by Carteret is not addressed by the removal statute, if there is a problem that needs to be addressed, Congress, and not the federal courts, is the proper body to remedy it.

## IV.  Conclusion

After a de novo review, the Court **OVERRULES** the objections of defendant Carteret Mortgage Corporation to the Report and Recommendation of January 5, 2007, and **ADOPTS** that Report and Recommendation.  Plaintiffs' motion to remand (#8) is **GRANTED** and this case is **REMANDED** to the Court of Common Pleas of Franklin County, Ohio.


 /s/   Gregory L. Frost
 GREGORY L. FROST
 UNITED STATES DISTRICT JUDGE